## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

RECEIVED AND FILED
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, PR

2019 MAY 15   PM 4: 35

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **INDICTMENT** |
| v. | CRIMINAL NO.  19- _296_     (~~GAG~~) |
| **GOPALKRISHNA PAI,**<br>Defendant. | **CRIMINAL VIOLATIONS:**<br>Count 1: 18 U.S.C. § 1349<br>Counts 2-20: 18 U.S.C. § 1343<br>Counts 21-26: 18 U.S.C. § 1028A<br>Counts 27-34: 18 U.S.C. § 1957 |
| | **34 COUNTS &**<br>**FORFEITURE ALLEGATIONS** |

### INDICTMENT

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

1.  F9 Advertising LLC (hereinafter "F9") was a for profit limited liability company organized in Puerto Rico on or about May 27, 2014 and registered under the Export Services Act, Puerto Rico Act 20 of 2012.

2.  F9 engaged in the sale of personal care products, including skin creams, via the internet utilizing a negative option marketing model. Negative option marketing is a category of commercial transactions in which sellers interpret a customer's failure to take an affirmative action, either to reject an offer or cancel an agreement, as assent to be charged for goods or services.

3.  Defendant **GOPALKRISHNA PAI** solely owned and operated F9.

4.  Defendant **GOPALKRISHNA PAI** served as the President, Secretary, and Treasurer of F9.

5.  Defendant **GOPALKRISHNA PAI** created certain limited liability companies (hereinafter "Straw Companies"), obtained individual Employer ID Numbers (hereinafter "EIN"s) from the Internal Revenue Service (hereinafter "IRS") for each Straw Company and opened individual

commercial bank accounts under his control for each Straw Company. The Straw Companies include the following:

1.      Advertising Unleashed LLC
2.      Accent Plus Solutions
3.      Ace Initiative Group LLC
4.      Action First Advertising LLC
5.      Ad Speed LLC
6.      Ads Nexus LLC
7.      Advertising Unleashed LLC
8.      Altitude Ads Ventures LLC
9.      Apex Ads Group LLC
10.     Apex Horizon Media LLC
11.     Apex Quantum Ventures LLC
12.     Apex Synergy Solutions LLC
13.     Apexis River Media LLC
14.     Big League Ads LLC
15.     Bright Future Concepts LLC
16.     C Financial LLC
17.     Calculated Clicks Media LLC
18.     Capital Advertising Network LLC
19.     Capital Leads Network LLC
20.     Central Media Net LLC
21.     Connected Ad Station LLC
22.     Connected Media Ventures LLC
23.     Creative Media Solutions LLC
24.     Definitive Advertising LLC
25.     Direct Marketing Zenith LLC
26.     Dynamo Concept Ventures LLC
27.     Elevated Optimal Solutions LLC
28.     Elite Clicks Network LLC
29.     Exact Edge Ads LLC
30.     Exceptional Media Network LLC
31.     EXM LLC
32.     Expedited Ventures LLC
33.     Fastlane Sales LLC
34.     Focused Enterprise Solutions LLC
35.     Focused Innovation Concepts LLC
36.     Force of Ads LLC
37.     Forward Media Solutions LLC
38.     Frontier Development Systems LLC
39.     Great Minds Media LLC
40.     Greatness In Ads LLC
41.     Health Wonder LLC
42.     High Point Solutions LLC

43. High Synergy Concepts LLC
44. Hyper Line Advertising LLC
45. Hyper Marketing Solutions LLC
46. Innovate Ads Enterprise LLC
47. Innovate Media LLC
48. Innovation Prime LLC
49. Innovus Future Ads LLC
50. Insight Operations LLC
51. Insight River Solutions LLC
52. Intrinsic Media Funnels LLC
53. Intrinsic Ventures LLC
54. Kinetic Ventures LLC
55. Laser Edge Concepts LLC
56. Laser Focused Precision LLC
57. Lifestyle Innovations LLC
58. Link Point Ventures LLC
59. Media Mastery LLC
60. Media Redefined LLC
61. Moonlight Wellness LLC
62. No Limits Network LLC
63. North Coast Ventures LLC
64. On Demand Ads LLC
65. Optimized Ventures LLC
66. Optimum Capital Resources LLC
67. Perfect Precision Media LLC
68. Phoenix Media Solutions LLC
69. Precise Concept Solutions LLC
70. Precision Media Inc
71. Precision Media LLC
72. Precision Networks LLC
73. Premium Placements Media LLC
74. Prime Advertising LLC
75. Prime Capital Advertising LLC
76. Primed Marketing LLC
77. Principal Media Ventures LLC
78. Priority Ads LLC
79. Quantum Level Media LLC
80. Quantum Networks LLC
81. Ready Set Media LLC
82. Real Nutra Solutions LLC
83. Redefined Media Process LLC
84. Responsive Media LLC
85. Ridge Multimedia
86. Ridge Multimedia Inc
87. Right Side Ads LLC
88. Source of Sales LLC

89.     Sunshine Media Solutions LLC
90.     Supremacy Media LLC
91.     Synergy Ads Ventures LLC
92.     Synergy Solutions Media LLC
93.     Tailwind Networks LLC
94.     Targeted Media Group LLC
95.     Terminus Media Group LLC
96.     Think Forward Ventures LLC
97.     Top Internet Ventures LLC
98.     Top Point Solutions LLC
99.     Transcendent Health LLC
100.    True Ads Media LLC
101.    True Ads Network LLC
102.    True Health Innovations LLC
103.    True Health Solutions LLC
104.    True Initiative LLC
105.    True Optimal Ventures LLC
106.    Turbo Marketing Solutions LLC
107.    Ultimate Media Solutions LLC
108.    Ultimate Offer Central LLC
109.    Ultra Offers LLC
110.    Upsurge Health LLC
111.    Velocity Ventures Media LLC
112.    Vypr Media Network LLC
113.    Wavefront Media LLC
114.    Wavefront Optimal Ventures LLC
115.    Xenos Media LLC
116.    Xtreme Point Offers LLC

## MERCHANT PROCESSORS

6.  Merchant processors were companies providing services to other businesses to process electronic payments, including but not limited to credit card payments.

7.  Humboldt Merchant Services (hereinafter "Humboldt") was a merchant processor company operating in California that provided credit card processing and electronic payment services.

8.  Paysafe Group Limited (hereinafter "Paysafe") was a multinational merchant processor company operating in the United States that provided credit card processing and electronic payment services.

9. Global Merchant Advisors (hereinafter "Global") was a merchant processor company operating in California that provided credit card processing and electronic payment services. Global is a Paysafe subsidiary.

10. Merchant Payment Acceptance Corp. (hereinafter "PayKings") was a merchant processor company operating in Washington that provided credit card processing and electronic payment services.

11. Together, Humboldt, Paysafe, Global, and PayKings are referred to herein as "the Merchant Processors."

12. The Merchant Processors established internal policies to close and terminate merchant accounts and bar the owners of those accounts from processing future transactions, including when excessive chargebacks were requested. A chargeback is the mechanism utilized to reverse a payment or otherwise process a refund for a specific monetary transaction processed by the Merchant Processors. The industry standard for closing an account when excessive chargebacks are requested is when chargebacks exceeded the greater of 1% of monthly transactions or 100 chargebacks in one month.

## FINANCIAL INSTITUTIONS

13. Capital One, N.A. and Capital One Bank (USA), N.A. were financial institutions, as that term is defined by 18 U.S.C. § 20, were insured by the Federal Deposit Insurance Corporation (hereinafter "FDIC"), and provided commercial and personal banking services under the name "Capital One."

14. Defendant **GOPALKRISHNA PAI** maintained and controlled a bank account at Capital One with Account Number XXXXX8569 in the name of F9.

15. Discover Bank was a financial institution, as that term is defined by 18 U.S.C. § 20, was insured by the FDIC, and provided personal banking services to Defendant **GOPALKRISHNA PAI.**

16. Defendant **GOPALKRISHNA PAI** maintained and controlled a checking account at Discover Bank with Account Number XXXXX3777 and a savings account with Account Number XXXXX3593.

17. Merrick Bank was a financial institution, as that term is defined by 18 U.S.C. § 20, was insured by the FDIC, and provided commercial banking services to PayKings.

18. BMO Harris Bank National Association was a financial institution, as that term is defined by 18 U.S.C. § 20, was insured by the FDIC, and provided commercial banking services to Humboldt.

**ADDITIONAL ENTITIES**

19. Dropbox, Inc. was a company headquartered in San Francisco, California, which provided electronic cloud storage and file synchronization via a file hosting service application known as "Dropbox." The Dropbox application permits users to store the content of electronic files in a specialized folder on the user's computer or electronic device which is synchronized to Dropbox's servers and accessible to other computers and electronic devices permitted to access the specialized folder.

**CONSPIRACY AND SCHEME TO DEFRAUD**

20. From in or about May 2014, through in or about October 2018, Defendant **GOPALKRISHNA PAI** conspired, devised, and engaged in a scheme to defraud merchant processors and others by submitting false information and falsified documentation to create merchant accounts in the name of Straw Companies, to process credit card and electronic payments, and to receive a substantial financial benefit.

21. Participants in the conspiracy and scheme to defraud recruited real individuals to serve as

nominees for merchant accounts to be opened with merchant processors in the name of Straw Companies.

22. Once recruited, nominees provided participants in the conspiracy and scheme to defraud with their personal identification information, including but not limited to their name, social security account number, signature, personal bank statements, tax returns, and a copy of their driver's license.

23. Participants in the conspiracy and scheme to defraud shared the nominees' documentation and personal identification information electronically, including via Dropbox, all through interstate wire communications with each other, including with Defendant **GOPALKRISHNA PAI**.

24. Participants in the conspiracy and scheme to defraud falsified information and documentation, including on EIN records and bank statements, which were submitted electronically via interstate wire to the Merchant Processors to create merchant accounts in the name of the Straw Companies.

25. Participants in the conspiracy and scheme to defraud purchased the use of proxy servers (hereinafter "proxies") and utilized internet protocol addresses (hereinafter "IPs") to disguise the identity and location of communications made via the internet in furtherance of the conspiracy and scheme to defraud.

26. By submitting materially false information and documentation, the participants in the conspiracy and scheme to defraud opened multiple merchant accounts and precluded the Merchant Processors from identifying that the Straw Companies were in fact related, controlled and operated by Defendant **GOPALKRISHNA PAI**.

27. By utilizing over one hundred (100) straw companies, Defendant **GOPALKRISHNA PAI** was shielded from consumer complaints and chargeback disputes.

28. In the event that a merchant account in the name of a Straw Company was closed by a Merchant

Processor, including due to excessive chargebacks, other merchant accounts would be unaffected because the Merchant Processor was unable to determine that they were related and controlled by Defendant **GOPALKRISHNA PAI.**

29. Payments made by consumers for products advertised by Defendant **GOPALKRISHNA PAI** and F9 were made via the Merchant Processors to bank accounts in the name of Straw Companies and controlled by Defendant **GOPALKRISHNA PAI.**

30. Participants in the conspiracy and scheme to defraud requested the electronic transfer of funds from the bank accounts in the name of the Straw Companies to the bank account in the name of F9 controlled by Defendant **GOPALKRISHNA PAI,** that is Capital One Account Number XXXXX8569.

31. Defendant **GOPALKRISHNA PAI** utilized funds from the conspiracy and scheme to defraud to pay co-conspirators, to transfer funds to personal accounts, and for personal expenses.

32. Participants in the conspiracy and scheme to defraud obtained approximately $98 million in total revenue, processed based on materially false information, through the Merchant Processors in the names of the Straw Companies.

### COUNT 1
### (Conspiracy to Commit Wire and Bank Fraud)
### 18 U.S.C. § 1349

33. Paragraphs 1-32 are hereby re-alleged as if set forth herein.

34. From in or about May 2014 through in or about October 2018, in the District of Puerto Rico and within the jurisdiction of this Court,

### GOPALKRISHNA PAI

the defendant herein, did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury to commit an offense contained in Chapter 63, of

Title 18, of the United States Code, that is wire fraud in violation of 18 U.S.C. § 1343 and bank fraud in violation of 18 U.S.C. § 1344(2).

## OBJECT OF THE CONSPIRACY

35. It was the common purpose and object of the unlawful conspiracy for Defendant **GOPALKRISHNA PAI** and others to conspire to engage in deceptive conduct designed to fraudulently obtain financial payments through merchant processors and financial institutions based on material representations, fraudulent information, and falsified documentation.

## MANNER AND MEANS

36. It was part of the manner and means of the unlawful conspiracy that the Straw Companies were utilized to open merchant accounts with the Merchant Processors.

37. It was part of the manner and means of the unlawful conspiracy that materially false information and falsified documentation was submitted to the Merchant Processors in order to open merchant accounts in the name of the Straw Companies.

38. It was part of the manner and means of the unlawful conspiracy that the true owner and operator of the Straw Company was disguised through the falsification of records and communications in order to prevent merchant processors and financial institutions from having knowledge of the true owner and operator.

39. It was part of the manner and means of the unlawful conspiracy that real individuals' personal identification information, including their name and signature, were transferred, possessed, and used to open merchant accounts with the Merchant Processors.

40. It was part of the manner and means of the unlawful conspiracy that materially false information and falsified documentation was submitted to merchant processors to avoid the closure and termination of merchant accounts.

41. It was part of the manner and means of the unlawful conspiracy that credit card and other payments processed by the Merchant Processors were paid to accounts in the name of the Straw Companies, controlled by Defendant **GOPALKRISHNA PAI** .

42. It was part of the manner and means of the unlawful conspiracy that payments were made to participants in the conspiracy from the net proceeds.

43. It was part of the manner and means of the unlawful conspiracy that proceeds of the conspiracy were received by Defendant **GOPALKRISHNA PAI.**

All in violation of 18 U.S.C. § 1349.

## COUNTS 2-20
## (Wire Fraud)
## 18 U.S.C. § 1343

44. Paragraphs 1-32 are hereby re-alleged as if set forth herein.

## SCHEME AND ARTICE TO DEFRAUD

45. From in or about May 2014 through in or about October 2018, in the District of Puerto Rico and within the jurisdiction of this Court,

**GOPALKRISHNA PAI**

the defendant herein, devised and intended to devise a scheme to defraud merchant processor companies, including Humboldt, Paysafe, Global, and PayKings, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

## MANNER AND MEANS

46. It was part of the scheme and artifice to defraud that participants in the scheme financially benefitted from the submission of materially false information and falsified documentation to the Merchant Processors in order to create merchant accounts in the name of the Straw Companies

and prevent the Merchant Processors from determining the true owner and operator of the Straw Companies.

47. It was part of the scheme and artifice to defraud that email communications and internet transmissions via interstate wire were utilized to submit merchant account documents to the Merchant Processors, including applications, containing materially false representations and falsified documentation.

48. It was part of the scheme and artifice to defraud that that materially false EIN documents and materially false bank statements were sent via interstate wire communication to the Merchant Processors.

49. It was part of the scheme and artifice to defraud that Defendant **GOPALKRISHNA PAI** materially misrepresented to the Merchant Processors the identity, location, and name of the true owner and operator of the Straw Companies, which was in fact Defendant **GOPALKRISHNA PAI.**

50. It was part of the scheme and artifice to defraud that real individuals' personal identification information, including their names and signatures, were transferred, possessed, and used to apply to open merchant accounts with the Merchant Processors in the name of the Straw Companies.

51. It was part of the scheme and artifice to defraud that materially false information and falsified documentation was submitted to merchant processors to avoid the closure and termination of merchant accounts.

52. It was part of the scheme and artifice to defraud that credit card and other payments processed by the Merchant Processors were paid to accounts in the name of the Straw Companies, controlled by Defendant **GOPALKRISHNA PAI.**

53. It was part of the scheme and artifice to defraud that payments were made to participants in the conspiracy from the net proceeds.

54. It was part of the scheme and artifice to defraud for participants in the scheme to use proceeds from the scheme to transfer to money others and for personal use.

55. On or about each of the dates set forth below, in the District of Puerto Rico,

**GOPALKRISHNA PAI**

the defendant herein, for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Description | Date |
|---|---|---|
| 2 | Email to PayKings attaching a merchant account application for Velocity Ventures Media LLC | December 20, 2016 |
| 3 | Email to PayKings attaching a merchant account application for Elevated Optimal Solutions LLC | December 8, 2016 |
| 4 | Email to PayKings attaching a merchant account application for Big League Ads LLC | December 28, 2016 |
| 5 | Email to PayKings attaching a merchant account application for Hyper Line Advertising LLC | October 20, 2016 |
| 6 | Email to PayKings attaching a merchant account application for Greatness In Ads LLC | October 11, 2016 |
| 7 | Email to GMA attaching a merchant account application for Velocity Ventures Media LLC | December 19, 2016 |
| 8 | Email to GMA attaching a merchant account application for Elevated Optimal Solutions LLC | December 8, 2016 |
| 9 | Email to GMA attaching a merchant account application for Big League Ads LLC | December 28, 2016 |
| 10 | Email to GMA attaching a merchant account application for Hyper Line Advertising LLC | October 20, 2016 |
| 11 | Email to GMA attaching a merchant account application for Greatness In Ads LLC | October 11, 2016 |
| 12 | Merchant account application submitted through Paysafe's online portal for Velocity Ventures Media LLC | February 2, 2017 |
| 13 | Merchant account application submitted through Paysafe's online portal for Elevated Optimal Solutions LLC | January 9, 2017 |

| 14 | Merchant account application submitted through Paysafe's online portal for Big League Ads LLC | February 8, 2017 |
| 15 | Merchant account application submitted through Paysafe's online portal for Greatness In Ads LLC | November 4, 2016 |
| 16 | Email to Humboldt attaching a merchant account application for Velocity Ventures Media LLC | December 19, 2016 |
| 17 | Email to Humboldt attaching a merchant account application for Elevated Optimal Solutions LLC | December 8, 2016 |
| 18 | Email to Humboldt attaching a merchant account application for Big League Ads LLC | December 28, 2016 |
| 19 | Email to Humboldt attaching a merchant account application for Hyper Line Advertising LLC | September 30, 2016 |
| 20 | Email to Humboldt attaching a merchant account application for Greatness In Ads LLC | October 11, 2016 |

56. All in violation of Title 18, United States Code, Section 1343.

## COUNTS 21-25
## (Aggravated Identity Theft)
## 18 U.S.C. § 1028A

57. Paragraphs 1-32 are hereby re-alleged as if set forth herein.

58. On or about the dates set forth below, in the District of Puerto Rico and within the jurisdiction of this Court,

### GOPALKRISHNA PAI

the defendant herein, aiding and abetting others, did knowingly and willfully cause the transfer, possession, and use, without lawful authority, of a means of identification of another person, to wit: the name, social security number, date of birth, and signature of other real persons whose initials appear below, during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), to wit: under 18 U.S.C. §§ 1343, 1344(2), 1349 and under 18 U.S.C. § 1028(a)(7) and (f). All in violation of 18 U.S.C. § 1028A(a)(1) and 2.

| Count | Description | Identification |
|-------|-------------|----------------|
| 21 | Merchant account application for Elevated Optimal Solutions LLC submitted to Humboldt on or about December 8, 2016 | Name, social security number, and signature of J.P. |
| 22 | Merchant account application for Big League Ads LLC submitted to Humboldt on or about December 28, 2016 | Name, social security number, and signature of S.P. |
| 23 | Merchant account application for Hyper Line Advertising LLC submitted to Humboldt on or about September 30, 2016 | Name, social security number, and signature of T.K. |
| 24 | Merchant account application for Greatness In Ads LLC submitted to Humboldt on or about October 11, 2016 | Name, social security number, and signature of L.K. |
| 25 | Merchant account application for Velocity Ventures Media LLC submitted to Humboldt on or about December 19, 2016 | Name, social security number, and signature of W.C. |

Each Count is a separate and distinct violation of 18 U.S.C. § 1028A(a)(1) and 2.

### COUNTS 26-34
### (Engaging in Monetary Transactions in Property
### Derived from Specified Unlawful Activity)
### 18 U.S.C. § 1957

59. Paragraphs 1-32 are hereby re-alleged as if set forth herein.

60. On or about the dates set forth below, in the District of Puerto Rico and within the jurisdiction of this Court,

**GOPALKRISHNA PAI**

the defendant herein, did knowingly engage and attempt to engage in the following monetary transactions by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the deposit, withdrawal, and transfer of U.S. currency, funds, and monetary instruments, such property having been derived from a specified unlawful activity, that is, bank fraud in violation of 18 U.S.C. § 1344(2), wire fraud in violation of 18 U.S.C. § 1343, and conspiracy to commit bank fraud and wire fraud in violation 18 U.S.C. § 1349.

| Count | Description | Date | Amount (USD) |
|---|---|---|---|
| 26 | Transfer from Elevated Optimal Solutions LLC Capital One account XXXXX2296 to F9 Capital One account XXXXX8569 | February 10, 2017 | $70,117.98 |
| 27 | Transfer from Big League Ads LLC Capital One account XXXXX2318 to F9 Capital One account XXXXX8569 | March 30, 2017 | $57,711.62 |
| 28 | Transfer from Hyper Line Advertising LLC Capital One account XXXXX2202 to F9 Capital One account XXXXX8569 | January 12, 2017 | $71,009.01 |
| 29 | Transfer from Hyper Line Advertising LLC Capital One account XXXXX3466 to F9 Capital One account XXXXX8569 | April 9, 2018 | $100,378.86 |
| 30 | Transfer from Precision Networks LLC Capital One account XXXXX8607 to F9 Capital One account XXXXX8569 | December 29, 2016 | $54,326.16 |
| 31 | Transfer from Greatness In Ads LLC Capital One account XXXXX2393 to F9 Capital One account XXXXX8569 | January 12, 2017 | $89,069.75 |
| 32 | Transfer from F9 Capital One account XXXXX8569 to Gopalkrishna Pai Discover Bank account XXXXX3593 | April 18, 2017 | $1,410,000 |
| 33 | Transfer from F9 Capital One account XXXXX8569 to Gopalkrishna Pai Discover Bank account XXXXX3777 | November 1, 2017 | $425,000 |
| 34 | Transfer from F9 Capital One account XXXXX8569 to Gopalkrishna Pai Discover Bank account XXXXX3777 | November 1, 2017 | $450,000 |

All in violation of 18 U.S.C. § 1957.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

## FRAUD FORFEITURE ALLEGATIONS

The allegations contained in Counts 1-20 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C.§ 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Upon conviction of an offense in violation of 18 U.S.C. § 1344, 1343, or 1349 as set forth in Counts 1-20 of this Indictment,

### GOPALKRISHNA PAI

the defendants herein, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, including, but not limited to the following:

a)   a money judgment in the amount of $98,429,205.

If any of the property described above, as a result of any act or omission of the defendant (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

### MONEY LAUNDERING FORFEITURE ALLEGATIONS

The allegations contained in Counts 26-34 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(1).

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of an offense in violation of 18 U.S.C. § 1957,

GOPALKRISHNA PAI

the defendant herein, shall forfeit to the United States of America any property, real or personal,

involved in such offense, and any property traceable to such property. The property to be forfeited

includes, but is not limited to the following:

a) a money judgment in the amount of $2,727,613.38.

If any of the property described above, as a result of any act or omission of the defendant (a)

cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited

with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially

diminished in value; or (e) has been commingled with other property which cannot be divided without

difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to

21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

TRUE BILL

FOREPERSON

May/15/2019
**Date**

**ROSA EMILIA RODRÍGUEZ-VÉLEZ**
United States Attorney

**José Capó Iriarte**
Assistant United States Attorney
Chief, Criminal Division

**Myriam Y. Fernández-Gonzalez**
Assistant United States Attorney
Deputy Chief, Financial Fraud &
Corruption Unit

**Seth A. Erbe**
Assistant United States Attorney

Page **17** of 17